People of the State of Illinois ex rel. Edward J. Barrett,
Plaintiff, v. Cody Trust Company, Defendant.
Life Insurance Company of Virginia, Appellant, v.
Charles H. Albers and State Mutual Life Assur-
ance Company, Appellees.

Gen. No. 39,702.

Opinion filed
March 16, 1938.

CASTLE, WILLIAMS & McCARTHY, of Chicago, for appellant; FRANK J. MADDEN and ROBERT R. HANLEY, both of Chicago, of counsel.

GEORGE A. NOVAK, of Chicago, for appellee Charles H. Albers.

DEFREES, BUCKINGHAM, JONES & HOFFMAN, for appellee State Mut. Life Assur. Co.; VINCENT O'BRIEN and JOHN MERRILL BAKER, both of Chicago, of counsel.

MR. JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

This is an appeal from a decree of the circuit court overruling exceptions to the master's supplemental report and denying certain relief sought by the petitioner, the Life Insurance Company of Virginia, against the respondent, Charles H. Albers, receiver of Cody Trust Company. The trial court in confirming the master's report found that the petitioner had traced $769.88 of its claim into the general bank accounts of the Cody Trust Company and that it was entitled to a preferred claim to that extent and to a general claim as to the balance; that no part of the claim of petitioner was a charge against the securities deposited by Cody Trust Company with the auditor of public accounts pursuant to the Trust Companies Act, because the moneys were received by the Trust Company as "agent" and not as "trustee."

The evidence shows that Charles H. Albers was appointed a receiver of the Cody Trust Company and

whilst he was in possession and liquidating the same the intervening petitioner, Life Insurance Company of Virginia, with the consent of the court filed a petition asking that a certain claim for moneys against the Cody Trust Company be considered as a trust fund to be paid out of the deposit of $200,000 in securities in the hands of the State auditor which had been deposited by the Cody Trust Company, according to the provisions of the statute, enabling them to do business.

The answers of the receiver and the State Mutual Life Assurance Company were filed to the petition in which they admit practically all the facts, but contended the relationship between Cody Trust Company and the Life Insurance Company of Virginia was not that of trustee and *cestui que trustent* but, on the contrary, it was a contractual relationship entered into for the purchase and sale of mortgages, as shown by their written contract.

The master and the trial court found that the sums aggregating $16,724.70, for which claim is made, were received by the Cody Trust Company as agent and not as trustee.

The trial court also found that at the time of the closing of the Cody Trust Company on December 12, 1933, there was no cash on hand, but there was due it from some other banks various sums making a total of $769.88, being assets of Cody Trust Company in their general bank accounts, but not in their trust accounts; that at no time prior to the closing of the Cody Trust Company was there a lesser amount than $769.88 due the Cody Trust Company from banks in its general bank account from the time of the accrual of the claim of the Life Insurance Company of Virginia to the date of the closing of the Cody Trust Company; that the funds collected from time to time on behalf of the Life Insurance Company of Virginia were deposited in said banks and the court allowed such amount as the money

of the Cody Trust Company, which had been identified by such bank deposits as belonging to the petitioner.

The claim against the Cody Trust Company by petitioner was for money collected from various principal notes and interest coupons which were forwarded to the Cody Trust Company, as agent for the collection and remittance, amounted to $16,724.70 and that the said claim did not therefore charge against the securities deposited by the Cody Trust Company with the auditor of public accounts pursuant to the Trust Companies Act.

Petitioner's contention is that all the transactions it had with the Cody Trust Company were as trustee; that inasmuch as the Cody Trust Company was named as trustee in the mortgage deeds, that their transactions with them were as fiduciaries which brought all their transactions within the purview and intention of the statutes of Illinois with relation to trust companies; that the securities amounting to $200,000 deposited with the State auditor were intended as security for them and that their claim against the Cody Trust Company should be protected by said deposit in the auditor's office and the claim should be allowed to be paid out of said fund as a preferred claim.

The receiver and the Mutual Life Assurance Company, the other appellee, take the position that the claim of the Cody Trust Company was not a preferred claim; that the transaction between the Life Insurance Company of Virginia and the Cody Trust Company was merely that of principal and agent; that the amount of the claim is admitted and should be allowed as a general claim but not as a preferred claim protected by the deposits of securities in the state auditor's office.

The contention of the State Mutual Life Assurance Company is that the securities deposited with the auditor are for the benefit of express trust creditors and

they join with the receiver in opposing the claim of the Life Insurance Company of Virginia.

It appears from the stipulations entered into that the Cody Trust Company was by its charter empowered to transact the following business: "To loan money, buy and sell securities, accept and execute trusts and to do all things necessary and proper to carry on a general trust company business." The relationship between the Life Insurance Company of Virginia and the Cody Trust Company was expressed in a written contract. The substance of which is as follows:

The Cody Trust Company is designated as party of the first part, hereinafter called Correspondent, and the Life Insurance Company of Virginia is designated as party of the second part, hereinafter called the Company.

The contract provides that the Correspondent desires to submit to the Company for purchase, notes or bonds secured by mortgages or trust deeds on city real estate and the Company is willing to examine such securities with a view to purchasing same upon the terms and conditions set forth.

The contract further provides that the said party of the first part shall act as Correspondent for the Company in the city of Chicago and other territory in which the Correspondent may operate for the purpose of submitting loans secured by mortgages or deeds of trust for sale to the Company, and shall act as agent in the collection and remittance of principal and interest as they become due on such loans as may be purchased; that it is not intended by this agreement to confer upon this Correspondent the exclusive right to submit loans to the Company in the aforesaid territory.

The contract further provides that no loan offered by the Correspondent shall exceed 60 per cent of the conservative value of the property and each loan shall

be evidenced by notes or bonds secured by mortgage or trust deed which shall be a first lien upon improved city real estate, and on forms and terms approved by the Company; that the Correspondent guarantees to protect and save harmless the Company from loss by reason of any mechanic's, builder's, supply, material-man's or other similar liens affecting any property upon which a loan may be made.

The contract further provides that the title policies issued direct to the Company shall be furnished with all loan papers, acceptable to the Company, or in lieu thereof complete abstracts of title with a certificate of title by a competent and reliable attorney acceptable to the Company; the title in each case to be continued to the dates on which the loans are assigned to the Company. In every case where no title insurance policy is furnished, the Correspondent guarantees to protect and hold harmless the Company from all loss or damage by reason of any lien or incumbrance upon or defect in the title to the property securing such loan.

The contract further provides that all expenses of every kind incurred in connection with the purchasing and transferring of any loan, including appraisal of the property, recording of assignment or otherwise, shall be paid by the Correspondent; that all loans must be closed and all sums of money necessary for that purpose advanced by the Correspondent and the necessary papers recorded before submitting them to the Company; that if the mortgage or deed of trust has not been returned, recorder's receipt shall be furnished and if requested by the Company, a copy of such filed mortgage or deed of trust; that a mortgage note assigned to the Company, a survey of the property, estoppel certificate by the original mortgagor and by the owner of the fee at time of assignment if other than

the original mortgagor, owner's affidavit as to title, policies of insurance and such other papers as the Company may require shall also be furnished; that all abstracts, certificates, policies of insurance and other papers shall be satisfactory to the Company and shall be lodged with and retained by it, together with the mortgage or deed of trust and mortgage note, until the respective loans are fully paid and satisfied; that upon acceptance of the loan by the Company and receipt and approval of all the papers pertaining thereto, the Company shall send remittance to the Correspondent or deposit same to its credit in a bank to be named, if so directed, by the Correspondent.

The contract further provides that until the said mortgage loans so purchased by the Company are paid in full, the Correspondent will attend to the collection of all interest thereon on the due dates of such interest payments, and will promptly remit the same to the Company, without deduction (except as hereinafter provided) in New York Exchange; and will collect the principal of the said loans or portions thereof when and as the same mature, together with interest accrued and unpaid thereon, and will promptly remit the same to the Company without deduction in New York Exchange; and the said Correspondent will see that all buildings upon the premises covered by said mortgage loans are kept adequately insured for the benefit of the Company against loss by fire in insurance companies satisfactory to the Company, for an amount sufficient to avoid coinsurance, and to give protection equal to the amount of the respective mortgage loans; and the said Correspondent will see to it that all taxes and assessments levied upon said premises covered by said mortgage loans are duly paid in accordance with the provisions of the said mortgages or trust deeds, and will at least once a year examine all necessary tax books to ascertain such payment, and will notify the

Company immediately if any of such taxes and assessments have been left unpaid, specifying the same in detail.

The contract further provides that in consideration of services rendered by the Correspondent as herein provided, the Company hereby agrees that the Correspondent may deduct and retain from any interest collected any amount in excess of the net rate at which the Company may have agreed to purchase or renew the said loans in full payment for all services rendered or expenses incurred.

The contract further provides that if any of said mortgage loans are not paid in full as to principal and interest, when due, or in case of any other default in the conditions thereof, the Correspondent shall have the privilege either of repurchasing same, paying therefor the amount of the principal then unpaid together with all accrued and unpaid interest and any other costs or expenses properly chargeable thereto, or of exchanging such delinquent loans, without expense to the Company, for other mortgage loans of substantially like amount drawing the then prevailing current interest rate and which shall be satisfactory to meet the approval of the Company; but in any such case the Company may elect which of such alternative privileges the Correspondent may exercise; the foregoing provisions of this paragraph shall not be interpreted as a legal guarantee by the Correspondent of the loans covered by this agreement.

The contract further provides that the Company shall have 12 months after accepting a loan from the Correspondent in which to examine the papers, investigate the moral risk and inspect the property upon which said loan is secured; that if after such examination and inspection, the Company considers such loan unsatisfactory, the Correspondent, within 60 days after being requested so to do, will repurchase such

loan on the same basis as sold, or it will substitute, without expense to the Company, other loans in substantially like amount subject to all the provisions hereof, which are acceptable to the Company and bear interest at the then prevailing current interest rate.

The contract further provides that the determination as to whether the loans offered, or the borrower, or the title to the real estate are satisfactory, shall be absolutely within the discretion of the Company, and its determination shall not be questioned by but shall be binding and conclusive upon the Correspondent.

It is quite evident from the terms of this contract that no fiduciary relationship of trustee and *cestui que trustent* was established and that the Life Insurance Company of Virginia was the principal and the Cody Trust Company was the agent. The details enumerated in the terms of the contract show that both parties to the contract were dealing at ''arm's length'' in the purchase and sale of the mortgages.

In our opinion the sole question to be determined is:

Are all the creditors of a trust company protected by the deposit placed with the State auditor under section 6 of the Trust Companies Act [Ill. Rev. Stat. 1937, ch. 32, § 292; Jones Ill. Stats. Ann. 135.25], or are they limited to those beneficiaries of express trusts entered into at the inception of the relationship because the corporation had been qualified under the statute to act as trustee?

This requires us to look at the act itself in order to determine whether, by its terms, it was intended that this provision of the statute should apply only to corporations authorized to accept express trusts and not to corporations who by virtue of their actions or by operation of law may find themselves declared to be constructive trustees. Ill. Rev. Stat. 1937, ch. 32, ¶ 287, sec. 1 [Jones Ill. Stats. Ann. 135.20], provides:

"Section 1. That any corporation . . . incorporated under the general incorporation laws of this State . . . for the purpose of *accepting* and *executing* trusts, and any corporation now or hereafter authorized by law to *accept* or *execute* trusts, may be appointed assignee or trustee by deed, etc."

Chapter 32, par. 292, sec. 6 of the same act [Jones Ill. Stats. Ann. 135.25], provides:

"Section 6. . . . No corporation authorized to accept and execute trusts shall, either directly or indirectly, through any officer, agent or employee of such corporation, accept or execute any trust concerning property located wholly or in part in this State without complying with the provisions of this Act. . . ."

Chapter 32, par. 294, sec. 8 [Jones Ill. Stats. Ann. 135.27], provides:

"Section 8. It shall not be lawful for any such company [that is, authorized to accept and execute trusts] to *accept* any trust or deposit as hereinbefore provided, after the passage of this Act, without first procuring from the Auditor of Public Accounts a certificate of authority stating that such company has complied with the requirements of this Act in respect to such deposit."

It will also be noted that the articles of incorporation of the Cody Trust Company, among other things, permits them to "accept" and "execute" trusts.

When considering this Trust Companies Act, the Supreme Court in the case of *People v. Cairo-Alexander County Bank,* 363 Ill. 589, at page 592, said:

"It is claimed that the bank in question had made a deposit with the State Auditor under the provisions of the Trust Companies Act (Ill. State Bar Stat. 1935, chap. 32, p. 928; Smith's Stat. 1935, p. 878); and that the funds in question are secured by that deposit. It is unnecessary to pursue this line of argument as the act

in question is not applicable. That act can be construed only to permit corporations who have qualified under it, to accept or execute trusts, be appointed assignees or trustees by deed, executors or guardians by will, or receivers, assignees, guardians, conservators, executors, administrators or trustees under order of court. No such case is before us. No trust was created for any purpose, nor was there any trust *res* segregated or set aside, the record showing all funds at the bank were at all times mingled in a common till.''

In the case of *Barrett v. Reuter,* 289 Ill. App. 221, this court in construing section 6 of the Trust Companies Act, at page 232, said:

''As to the contention that the clause of the Trust Companies Act 'said deposits to be for the benefit of the creditors of said company,' means that the securities are to be held for the benefit of all creditors of the bank or trust company, we think it is apparent that such a construction would require us to ignore the apparent purpose which the Trust Companies Act was intended to accomplish. It would also prevent a uniform application of the act to all corporations doing a trust business. Under such a construction of the act the creditors of a trust company engaged only in doing a trust business would acquire better protection than creditors of a corporation doing a trust business and a banking business as well. The Supreme Court has recently held that this was not the intention of the legislature in the enactment of the law. *People ex rel. Barrett v. Cairo-Alexander County Bank,* 363 Ill. 589.''

It is apparent from the foregoing language and that of the statute that the deposit made under section 6 does not protect all creditors of the company, but only those who are creditors as a result of an express trust accepted by the said trustee.

In construing the Trust Companies Act, the cases which have passed upon the question now before us and where recourse has been allowed to the creditors against the deposit with the State auditor, have all been cases where there has been an express trust.

*In re National Bank of Ottawa,* 273 Ill. App. 545, where the claimant was allowed recourse to the deposit in the State auditor's office, there was an express trust by written declaration.

In the case of *People v. Cairo-Alexander County Bank,* 363 Ill. 589, from which we have heretofore quoted, the receiver sought to obtain the protection of the securities deposited pursuant to section 6 of the Trust Companies Act by transferring on the books of the bank its deposits from the commercial side of the bank to the trust department, but as the court pointed out "no trust agreement was executed," and recourse to the fund was denied.

In *People v. Canton Nat. Bank,* 288 Ill. App. 418, a bank authorized to do a trust business was named trustee in a testamentary trust and accepted. On the insolvency of the bank it was held that the beneficiaries were entitled to recourse to the deposit made pursuant to section 6. The claim of the receiver of the bank that all creditors of the bank were entitled to the benefit of the securities deposited with the auditor of public accounts was denied.

It is contended by appellant here that out of the $16,724.70, collected by the Cody Trust Company in payment of notes and interest coupons forwarded to it by petitioner, it is stipulated that $5,178.05, represented moneys received by the trust company under trust deeds wherein it was named as trustee.

The trust deeds in question contain the following provision:

". . . all of said principal and interest payments being payable in gold coin of the United States of

America of or equal to the standard and value, weight or fineness, at the office of Cody Trust Company in Chicago, Illinois, and as well to insure performance of all the covenants, agreements, conditions, and to render effective all provisions herein and in said notes contained.''

Appellant claims that the fact that this last named provision is contained in the trust indenture under which it is named trustee, instead of in a separate instrument, makes Cody Trust Company trustee under an express trust of the principal and interest paid to it.

We think the trusteeship, outside of this stipulation, if any there was, became what is known in law as a resulting or constructive trust growing out of the fact that the money that was paid into the Cody Trust Company was not remitted to the petitioner in accordance with the contract of agency entered into between the Life Insurance Company of Virginia and the Cody Trust Company.

We do not believe the words in the Illinois Act, ''trustees by deed and trustee by will'' can be overlooked. That language does not permit a different kind of trusteeship than therein described. We believe that it was intended by the legislature that the trusteeships that were to be covered by the statute were those in which appointments were made either by deed or its equivalent or made by the court and accepted voluntarily in each instance by the trust companies and does not extend to ''resulting'' or ''constructive'' trusts or any other kind of trusteeship which, by operation of law, might grow out of the acts and doings of trust companies or their officers.

As to the item of $5,178.05, a different situation arises. It is agreed that this sum represented moneys received by the Cody Trust Company under trust

deeds wherein it was named as trustee. In other words, the stipulation shows that the Cody Trust Company was named trustee by deed in compliance with the statute and the money they had in their possession was received by them by virtue of such appointment. Therefore, as to the item of $5,178.05, we think by virtue of said trust deed and stipulation that it brings this amount within the provision of the statute and that the securities deposited with the State auditor should be applicable as to this amount.

For the reasons herein given the decree of the circuit court is affirmed in all particulars except as to the sum of $5,178.05 and as to that amount the decree is reversed and remanded with directions that this claim should be allowed as against the securities deposited with the State auditor, and the trial court committed error in not allowing that claim.

For the reasons herein given the decree of the circuit court is affirmed in part and reversed and remanded in part with directions.

*Affirmed in part and reversed and remanded in part with directions.*

HEBEL, P. J., and HALL, J., concur.