

# IN THE
# Court of Appeals of Indiana

Ryan Gluys,

*Appellant-Defendant*

FILED

Feb 25 2026, 8:36 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

v.

State of Indiana,

*Appellee-Plaintiff*

February 25, 2026

Court of Appeals Case No.
25A-CR-1488

Appeal from the Rush Circuit Court

The Honorable Brian D. Hill, Judge

Trial Court Cause No.
70C01-2405-CM-264

**Opinion by Judge May**
Judges Altice and Foley concur.

**May, Judge.**

Ryan Gluys appeals following his conviction of Class A misdemeanor invasion of privacy.[1] Gluys raises two issues on appeal, which we restate as:

> 1. Whether reversible error occurred when Gluys was removed from a pretrial diversion program without a hearing at which the State proved Gluys violated their agreement; and

> 2. Whether the State proved Gluys committed harassment in violation of a protective order.

No reversible error occurred when Gluys was removed from the pretrial diversion program without a hearing, but Gluys's conviction of invasion of privacy must be reversed because the trial court relied on the wrong statute when determining whether Gluys committed harassment in violation of the protective order. We accordingly reverse and remand.

## Facts and Procedural History

Prior to the events at issue herein, Gluys had a child ("Child") with Amanda Blackford. The record does not reflect Child's exact age, but we can infer that Child is still a minor. Blackford thereafter became romantically involved with Nevada Benedict.[2]

---

[1] Ind. Code § 35-46-1-15.1(a)(1).

[2] Before trial, Benedict and Blackford married, and Benedict changed his last name to "Blackford." (Tr. Vol. II at 13.) We nevertheless refer to him as Benedict throughout this opinion to distinguish him from Amanda Blackford.

[3]     On September 1, 2022, the Hancock Superior Court entered an Order of Protection for Benedict, Blackford, and three other members of their household. The Order "enjoined [Gluys] from threatening to commit or committing acts of domestic or family violence or harassment against" Benedict, Blackford, and the other members of their household. (Ex. Vol. at 4.) By its terms, the Order of Protection was to expire on September 1, 2024. (*Id*. at 3, 6.) The Order was served on Gluys on September 9, 2022. (*Id*. at 7.)

[4]     In August 2023, Gluys and Blackford signed an Agreed Entry to resolve custody and parenting time issues regarding Child, and the Hancock County Court signed the Agreed Entry to make it the court's order. The Agreed Entry provided the parties would co-parent "by communicating with one another in writing by email only and only about their [child]. All communication shall be non-abusive in nature and reasonable at all times." (*Id*. at 8.)

[5]     On May 10, 2024, while Child was with Gluys, Child called Blackford for assistance because Child felt unsafe. Benedict called 911, and police went to Gluys's house and removed Child. At 1:29 a.m. on May 11, 2024, Gluys sent an email to Blackford that said:

> You don't deserve to be a Mother. I hope you kill yourself! I'll be praying for you! I'll pray you suffer and die! You piece of shit horror bitch! The world will [sic] better off without trash horrors like you[.]

(*Id*. at 12.) Then, at 4:13 a.m. on May 11, 2024, Gluys sent an email to Blackford that said:

> Now, I hope, you know how it is. You use to be cool…you've been just a hateful bitch for a long time to me[.]

(*Id*. at 13.) Finally, six minutes later, Gluys sent an email to Blackford that said:

> Don't ever talk to me again unless it's through a lawyer[.]

(*Id*. at 14.) When Blackford checked her email later on May 11, she saw these messages and called the police to report that Gluys violated the protective order.

[6] On May 13, 2024, the State charged Gluys with invasion of privacy based on his alleged violation of the protective order. In August 2024, Gluys and the State entered a Pretrial Diversion Agreement – the State agreed to withhold prosecution "so long as the Defendant complies with the terms of the Agreement" and Gluys agreed to pay fees, to not commit criminal offenses for six months, to not use or possess illegal substances, to not be intoxicated on alcohol, to report any change of address, and to "[m]aintain general good behavior." (Appellant's App. Vol. 2 at 50.)

[7] On September 18, 2024, the State filed a motion asking the trial court to set trial on Gluys's charge of invasion of privacy because Gluys violated his pretrial diversion program. According to the State's motion, the State had charged Gluys with Level 6 felony intimidation and Class A misdemeanor operating a vehicle while intoxicated under cause number 30D02-2409-F6-1710. (*Id*. at 54.) The court set dates for a final pretrial conference and a bench trial.

[8] After multiple continuances prompted by changes of defense counsel and defense motions, a pretrial conference finally occurred on May 6, 2025. At this hearing, Gluys requested new counsel and a jury trial. The trial court explained to Gluys that he could not change counsel again and that he had waived his right to a jury by failing to request a jury prior to his first trial setting in July 2024. At the bench trial on May 20, 2025, Gluys renewed his demand for a jury trial, which the trial court agreed to "note" for the record, and then Gluys asserted:

> One additional issue, Judge, um, again, for the record, there was a Pretrial Diversion entered in this case, Mr. Gluys does not believe, in fact, that he violated that diversion because the diversion says that he should commit no criminal offenses either felony or misdemeanor. Um, the case that triggered the reinstitution of the proceedings in this case is still pending in Hancock County. He, therefore, does not believe that he violated the Pretrial Diversion Agreement. Um, he indicated his attorney advised him that, um, if the diversion was violated, the process would start over. Um, I advised him I didn't necessarily agree with that but that, he's alleging that he relied on that, you Honor.

(Tr. Vol. II at 10.) The trial court asked about Gluys's reliance, and counsel indicated Gluys believed he could request a jury trial if he was removed from the diversion program. The trial court denied Gluys's request for a jury trial, and then counsel asked for a separation of witnesses for trial.

[9] The trial court heard testimony from Benedict, Blackford, and the investigating officer. The State admitted into evidence the protective order, the agreed

paternity order, and the emails from Gluys to Blackford. The court found Gluys guilty of invasion of privacy and imposed a thirty-day executed sentence.

# Discussion and Decision

## 1. Pretrial Diversion

Gluys first challenges the revocation of his pretrial diversion agreement. However, an appellant generally cannot raise an issue on appeal that was not presented to the trial court. *Benjamin v. State*, 233 N.E.3d 506, 512 (Ind. Ct. App. 2024). On September 18, 2024, the State moved for the trial court to set a trial date because Gluys had violated his pretrial diversion agreement. At no point thereafter did Gluys file an objection to his cause being set for trial without a hearing to determine whether he had violated the agreement. Instead, on the morning of the trial, in the midst of arguing about whether Gluys should be allowed to assert his right to a jury trial, Gluys's counsel indicated Gluys did not believe he violated the pretrial diversion agreement. Counsel did not argue Gluys was entitled to a hearing regarding the revocation of that agreement, nor did counsel cite any authority to support such an argument. Gluys accordingly waived this issue by failing to properly assert it before the trial court. *See id.* (holding Benjamin waived Evidence Rule 704 objection to admission of evidence by presenting only a relevance objection at trial).

[11]    Despite waiver at trial, we may reverse on appeal if the appellant can demonstrate an error that was fundamental. *Peters v. State*, 959 N.E.2d 347, 352 (Ind. Ct. App. 2011).

> Fundamental error is "error so prejudicial to the rights of the defendant that a fair trial is rendered impossible." The fundamental error rule is extremely narrow, and applies only when "the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process."

*Id*. (internal citation omitted) (quoting *Wilson v. State*, 931 N.E.2d 914, 919 (Ind. Ct. App. 2010), *trans. denied*). Gluys cannot demonstrate fundamental error, however, because he had no due process right to a hearing before the revocation of his pretrial diversion program.[3] *See J.S. v. State*, 136 N.E.3d 255, 258 (Ind. Ct. App. 2019) (holding due process does not require a hearing before removal from a pretrial diversion program). Nor has Gluys demonstrated the revocation of his pretrial diversion program constituted the type of prosecutorial behavior that "impaired the reliability and usefulness of an important prosecutorial tool and tended to undermine the integrity and credibility of the criminal justice system to an extent compelling reversal[.]" *Bowers v. State*, 500 N.E.2d 203, 204 (Ind. 1086). We accordingly turn to Gluys's second argument.

---

[3] Moreover, on August 14, 2025, Gluys pled guilty to one of the two crimes alleged by the State in support of his removal from pretrial diversion, *see* https://public.courts.in.gov/mycase/#/vw/CaseSummary/eyJ2Ijp7IkNhc2VUUb2tlbiI6IkZOc3NpbkRsd21s ZG5FYm1GLVNLQ3RssajVVbG52NVB2WFBqeWZyZGxZejAxIn19 [**https://perma.cc/CZ3S-L48N**], which suggests the State could have proven that Gluys violated his pretrial diversion agreement.

## 2. Invasion of Privacy

[12] Gluys next argues the State failed to prove he committed harassment as required to convict him of invasion of privacy. The State's charge of invasion of privacy indicated:

> Gluys did knowingly violate a protective order to prevent harassment issued under I.C. 34-26-5 by the Hancock County Superior Court in 30D01-2208-PO-1059 to protect Amanda Blackford, to wit: sent messages to . . . Blackford in violation of the protective order valid through September 1, 2024, contrary to the form of the statutes in such cases made and provided by I.C. 34-46-1-15.1(a)(1) and against the peace and dignity of the State of Indiana.

(Appellant's App. Vol 2 at 14.)

[13] Invasion of privacy occurs if someone "knowingly or intentionally violates . . . a protective order to prevent domestic or family violence or harassment issued under IC 34-26-5[.]" Ind. Code § 35-46-1-15.1 (2023). Benedict obtained a protective order against Gluys under Indiana Code chapter 34-26-5, and that order prohibited Gluys from "threatening to commit or committing acts of domestic or family violence or harassment against" Benedict, Blackford, and the other members of their household.[4] (Ex. Vol. at 4.)

---

[4] The State asserts on appeal, as it argued at trial, that "the protective order, which was issued to prevent domestic or family violence or harassment, prohibited Gluys from having 'any contact' with Amanda (Tr. 13; Ex. 1)." (Br. of Appellee at 14); *see also* (Tr. Vol. II at 40-41). Neither Exhibit 1 nor page 13 of the Transcript provides evidence that the protective order prohibited all contact between Gluys and Blackford.

[14] Our legislature determined that the definition of "harassment" for purposes of the crime of invasion of privacy would be the definition provided in Indiana Code section 34-6-2-51.5. Ind. Code § 35-31.5-2-150 (2019). That definition of harassment includes

> conduct directed toward a victim that includes, but is not limited to, repeated or continuing impermissible contact:
>
> (1) that would cause a reasonable person to suffer emotional distress; and
>
> (2) that actually causes the victim to suffer emotional distress.

Ind. Code § 34-6-2-51.5 (2019).

[15] Gluys argues prejudicial error occurred because the trial court applied the incorrect statutory definition of harassment to determine whether he violated the protective order. Gluys asserts, and the State concedes, that the trial court relied on the definition of harassment found in Indiana Code section 35-45-2-

---

The protective order does prohibit Gluys "from harassing, annoying, telephoning, contacting, or directly or indirectly communicating with the Petitioner." (Ex. Vol. at 4.) However, the "Petitioner" was "Nevada Lee Benedict" not Blackford. (*Id.* at 3, 4.)

The protective order also indicated Gluys "may not communicate" with Blackford until a custodial order had been entered regarding Child. (*Id.* at 5.) However, a custody order was entered in August 2023, and the communications at issue did not occur until May 2024, which renders moot the "may not communicate" provision regarding Blackford in the protective order.

Accordingly, we reject the State's erroneous factual assertion that the protective order prohibited Gluys from having "any contact" with Blackford. Because the protective order did not prevent all contact between Gluys and Blackford, the State's references to the requirements of the Agreed Entry in the paternity proceedings are also irrelevant for purposes of determining whether Gluys committed invasion of privacy.

2(a)(2) (1996), which provides: "A person who, with intent to harass, annoy, or alarm another person but with no intent of legitimate communication: . . . communicates with a person by telegraph, mail, or other form of written communication[.]" The transcript demonstrates the trial court quoted the criminal definition of harassment from Title 35, rather than the civil definition of harassment from Title 34, as the court was determining whether to find Gluys guilty. (Tr. Vol. II at 42.)

[16] In bench trials, we generally apply a presumption that a trial court knows and applies the law correctly. *Porter v. State*, 272 N.E.3d 996, 1000 (Ind. Ct. App. 2025). "The presumption may be rebutted if the trial court's oral remarks 'disclose use of an erroneous standard with clarity and certainty[.]'" *Id.* (brackets in *Porter*) (quoting *Moran v. State*, 622 N.E.2d 157, 159-60 (Ind. 1993)). Herein, we cannot apply that presumption because the trial court's own statement indicates it relied on the wrong statutory definition of an element required to declare Gluys guilty. *See, e.g.*, *Hernandez v. State*, 45 N.E.3d 373, 378 (Ind. 2015) ("[r]eversal is required if the jury's decision may have been based upon an erroneous instruction") (bracket in *Hernandez*) (quoting *Harrington v. State*, 413 N.E.2d 622, 626 (Ind. Ct. App. 1980)).

[17] The State suggests we should ignore the trial court's references to the incorrect statute as "immaterial," (Br. of Appellee at 15 n.3), and Gluys argues on reply that we cannot see the error as immaterial when the two definitions of harassment have different elements. (*See* Reply Br. at 11-12.) We agree with Gluys. Herein, the trial court convicted Gluys based upon the elements of the

criminal harassment statute that required the trial court to find Gluys communicated "with intent to harass, annoy, or alarm[,]" Ind. Code § 35-45-2-2(a)(2), rather than the correct definition required the trial court to find Gluys's communication "would cause a reasonable person to suffer emotional distress" and "actually cause[d] [Blackford] to suffer emotional distress." Ind. Code § 34-6-2-51.5 (2019). Nothing the trial court said after reading the incorrect statute suggests the trial court considered the objective and subjective elements of emotional distress required by Section 46-6-2-51.5. We cannot say it was "immaterial" that the trial court used the incorrect definition of harassment to determine if Gluys violated the terms of the protective order by harassing Blackford, when the legislature chose those specific elements to be in the definition applicable to harassment for purposes of a criminal conviction of invasion of privacy. *See*, *e.g.*, *Thomas v. State*, 827 N.E.2d 1131, 1134 (Ind. 2005) (citing *In re Winship*, 397 U.S. 358, 373-74 (1970)) ("[I]t is bedrock law that a defendant in a criminal case is entitled to have the [fact-finder] instructed on all of the elements of the charged offense.").

[18] The State also argues that we can affirm Gluys's conviction because the evidence was sufficient to demonstrate Gluys committed harassment under the correct statutory definition. However, we may not affirm on this basis because as a reviewing court, it is not our place "to prejudge what a [fact-finder] might have determined if it had been properly instructed." *Taylor v. State*, 922 N.E.2d 710, 719 (Ind. Ct. App. 2010), *trans. granted* 940 N.E.2d 823 (Ind. 2010), *grant of trans. vacated & opinion reinstated* 936 N.E.2d 1241 (Ind. 2010), *trans. vacated* 940

N.E.2d 829 (Ind. 2010). We do not know what the trial court would have determined if it had considered the objective and subjective emotional distress elements for harassment as defined in Section 34-6-2-51.5 (2019), and we do not assess criminal guilt de novo. *See id.* ("Harmless-error analysis has no place where, as here, an essential instruction on the underlying offense is missing entirely."). We accordingly reverse Gluys's conviction of invasion of privacy and remand for the trial court to determine Gluys's guilt using the definition of harassment required by the statutes in effect when he committed his crime. *See, e.g.*, *Miller v. State*, 77 N.E.3d 1196, 1197 (Ind. 2017) (holding that, when trial court in bench trial applied the wrong legal standard, the appropriate remedy was for appellate court to "remand for the trial court to reconsider the case under the correct legal standard").

## Conclusion

[19] Gluys has not demonstrated reversible error occurred when he was removed from his pretrial diversion program without a hearing. However, the trial court's reliance on the improper definition of harassment when determining whether Gluys committed invasion of privacy requires us to reverse his conviction and remand for the trial court to reconsider based on the correct definition. We accordingly reverse and remand.

[20] Reversed and remanded.

Altice, J., and Foley, J., concur.

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana


ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General
Indianapolis, Indiana

Andrew M. Sweet
Deputy Attorney General
Indianapolis, Indiana