**Jamie VASQUEZ, Appellant–Petitioner,**

v.

**STATE of Indiana, Appellee–Respondent.**

**No. 44A03–9803–CR–95.**

Court of Appeals of Indiana.

Oct. 23, 1998.

John Jay Boyce, LaGrange, Jeffrey W. Wible, LaGrange, for Appellant–Petitioner.

Jeffrey A. Modisett, Attorney General, Randi E. Froug, Deputy Attorney General, Indianapolis, for Appellee–Respondent.

## OPINION

RATLIFF, Senior Judge.

### STATEMENT OF THE CASE

Appellant–Defendant Jamie Vasquez ("Vasquez") appeals his conviction of operating a motor vehicle after suspension as an habitual traffic violator, a Class D felony. Ind.Code § 9–30–10–16.

We affirm.

### ISSUE

Vasquez raises one issue on appeal which we restate as: whether a driver's license suspension is valid where the notice of suspension is provided in English to a person who cannot read English.

### FACTS AND PROCEDURAL HISTORY

Prior to the events at issue Vasquez had obtained an Indiana driver's license, though he spoke limited English and his primary language was Spanish. Over a period of time Vasquez was convicted of operating while intoxicated, a Class A misdemeanor, on October 10, 1989; operating while intoxicated, a Class D felony, on March 27, 1990; and operating while intoxicated, a Class D felony, on February 18, 1994. Vasquez also had a conviction for leaving the scene of a personal injury accident on February 18, 1994.

On April 15, 1994, the Indiana Bureau of Motor Vehicles determined Vasquez to be an habitual traffic violator and suspended his

driving privileges for a period of ten years effective May 27, 1994. Notice of his status as an habitual traffic violator was mailed to Vasquez on April 18, 1994. The notice of suspension and additional forms were written in English.

On June 5, 1994, Vasquez was operating a motor vehicle in LaGrange County, Indiana, when he was stopped by Indiana State Trooper Jeff Boyd. Vasquez was subsequently convicted of operating a motor vehicle after suspension as an habitual traffic violator, a Class D felony. The court sentenced Vasquez to serve an eighteen-month term and suspended his driver's license for life.

## DISCUSSION AND DECISION

■ We have stated that the three elements of driving while suspended are (1) operating a motor vehicle; (2) while driving privileges are suspended; and (3) a showing that the defendant knew his driving privileges were suspended. *Johnson v. State*, 698 N.E.2d 821, 822 (Ind.Ct.App.1998). Both proof of mailing and proof of the contents of the notice are evidentiary prerequisites to establishing a valid license suspension. *Id.* If the suspension is not valid, then a driver cannot be convicted of operating a motor vehicle after suspension as an habitual violator. *Id.* A notice of suspension must inform the person his or her driving privileges will be suspended and inform the person of the right to relief or judicial review. Ind.Code § 9–30–10–5(a), (b).

■ Vasquez does not dispute that he was operating a motor vehicle. Moreover, Vasquez does not deny that he received the notice which was sent to his last known mailing address. Neither does he dispute the sufficiency of the content of the notice. Vasquez claims that because the notice was in English, instead of his primary language, Spanish, he did not have knowledge that his driving privileges were suspended; therefore, the suspension was invalid. The State counters that requiring the Bureau of Motor Vehicles to ascertain the language literacy of those persons to whom it sends such notices, and to write the notice in that language, would place an intolerable burden on the Bureau of Motor Vehicles.

In Indiana we require by statute that the examination for a driver's license include a test of ability to read and understand highway signs. Ind.Code § 9–24–10–4(a)(1)(B). Issuance of a driver's license to an individual who does not understand highway warnings or direction signs written in the English language is prohibited. Ind.Code § 9–24–2–3(a)(4). Moreover, English is the official language of Indiana. Ind.Code § 1–2–10–1.

There is no question that the Bureau of Motor Vehicles satisfied the statutory and case law requirements for the notice. In *Collins v. State*, 567 N.E.2d 798, 800 (Ind. 1991), the supreme court noted that when the Bureau of Motor Vehicles mails a notice to the defendant's last known address, the trial court may infer knowledge of the suspension from proof of the notice. Because of the difficulty experienced by prosecutors in proving a driver had knowledge of the suspension, the supreme court recognized that the evidence is permissible to establish the inference that the driver knew of the suspension. *Id.* In addition, the supreme court has held that proof of mailing of a notice of suspension of license as a habitual traffic violator to the driver's last known address suffices to show that the driver knew or reasonably could have known. *Fields v. State*, 679 N.E.2d 898, 901 (Ind.1997).

In *Walters v. Reno*, 145 F.3d 1032 (9th Cir.1998), the Ninth Circuit Court of Appeals was faced with a due process challenge to the notice given aliens charged with civil document fraud. Those aliens received three forms notifying them of two hearings. One of the hearings, on the document fraud charge, which is punishable by a fine and a cease and desist order, is held only if the alien makes a request in writing. The second hearing, on the issue of deportation, is held automatically. Two of the forms were in English only, while the other form was in English and Spanish. The court summed up the information provided the aliens as follows:

> None of the forms advises the alien that if he fails to request a separate hearing on the document fraud charges, the deportation hearing he receives will ordinarily be meaningless, that he will be found deporta-

ble and excludable on the ground of document fraud without any further opportunity to challenge that determination, and that his deportation will in most instances be virtually automatic. 145 F.3d at 1039. The court agreed with the district court in finding the forms to be confusing in any language.[1] However, the court hesitated to require the government, in that case the INS, to prepare all of the forms in English and Spanish. The court reasoned as follows:

> [W]e are reluctant to insist that the relevant forms be prepared in both English and Spanish. We recognize that many of the recipients primarily speak a language other than English, and we agree with the district court that multilingual forms would be an effective means of ensuring adequate notice. However, we prefer not to impose such an obligation on the government. Instead, we think it more appropriate to leave it to the INS to determine in the first instance how best to revise its forms so as to 'simply and plainly communicate' the necessary information and advice to the aliens against whom it brings charges. 145 F.3d at 1053.

The Ninth Circuit declined to require the government to provide notice forms in English and Spanish to a class of individuals, aliens, who were known to primarily speak a language other than English, involving issues as serious as deportation. Similarly we decline to require the Indiana Bureau of Motor Vehicles to determine whether its drivers are literate, and if so, in what language. Thus, we conclude the suspension of Vasquez's license was valid and that his conviction should stand.

## CONCLUSION

The decision of the trial court is affirmed.

GARRARD and FRIEDLANDER, JJ., concur.

---

**1.** In fact, the court observed "that the documents are so bureaucratic and cumbersome and in some respects so uninformative and in others so misleading that even those aliens with a reasonable command of the English language would not receive adequate notice from them." 145 F.3d at 1041. We believe this demonstrates that the court's primary concern was the deficiency of the notices' content rather than the language in which they were written.