Michael L. ROWE, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 26A05–9907–CR–306.

Court of Appeals of Indiana.

Oct. 28, 1999.

John Cameron Hicks, Princeton, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Michael McLaughlin, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BROOK, Judge

### Case Summary

Appellant-defendant Michael L. Rowe ("Rowe") appeals his convictions for driving while intoxicated having a prior conviction within five (5) years; driving while suspended as a habitual traffic offender; and possession of marijuana. We affirm in part and reverse and remand in part.

### Issues

Rowe presents the following three restated issues for our review:

(1) whether the trial court erred in allowing Rowe's arresting officer to testify regarding conversations he overheard transmitted by citizens band ("CB") radio;

(2) whether the trial court erred in allowing the State to comment, both through direct examination of Rowe's arresting officer and in closing arguments upon Rowe's silence as to whether he was actually driving before he was arrested; and

(3) whether the State presented sufficient evidence to establish that Rowe had notice of his previous license suspension.

### Facts and Procedural History

The facts most favorable to the judgment reveal that at approximately 11:30 p.m. on June 25, 1998, Deputy James Stoll ("Deputy Stoll") of the Gibson County Sheriff's Department received a dispatch regarding a suspected drunk driver who was driving north on Highway 41 in a white truck with a camper shell. As Deputy Stoll drove in search of the truck, he heard over his CB radio three or four truck drivers talking about a drunk driver they had seen. Deputy Stoll asked the truck drivers over the CB whether the driver they were discussing was driving a white pickup with a camper shell, and one of the truck drivers answered affirmative-

ly, telling Deputy Stoll that the white pickup was taking the ramp off the interstate, heading toward Princeton, Indiana. Another driver volunteered, "I'm glad he's getting off there before he kills somebody."

Deputy Stoll first observed Rowe's truck going into a hotel parking lot in Princeton. A few seconds later, he arrived at the same parking lot and saw that Rowe was seated in the driver's seat of the truck. He also saw another white male walking "from the general area of the truck over toward the front of" the hotel. Deputy Stoll later testified that as he approached Rowe and asked for his driver's license and registration, he immediately smelled "an extremely strong odor of an alcoholic beverage"; and observed that Rowe's eyes were "badly bloodshot and partially closed" and that Rowe was "kind of slumped over in his seat somewhat." Deputy Stoll also testified that the truck's engine was running, and that there was a fairly large cooler on the seat next to Rowe. When Rowe pulled out his wallet, he had considerable difficulty trying to find the license although Deputy Stoll could easily see the license "sitting right there in his wallet."

Deputy Stoll administered three field sobriety tests, which were recorded by an audio/video unit attached to his vehicle. Rowe failed all three. Rowe refused to submit to a test to measure his blood alcohol content. Deputy Stoll also recovered from the truck a baggie containing marijuana and a pipe containing marijuana residue.

When Deputy Stoll ran Rowe's license to get his driving history, he learned that Rowe had been classified as a habitual traffic violator and that his license had been suspended for ten years effective October 26, 1996. Rowe's official driving record, a redacted version of which was en-

tered into evidence, indicated that notice of the ten-year suspension had been mailed on September 27, 1996, to the address listed on the license Rowe gave to Deputy Stoll.

On March 18, 1999, Rowe was tried by a jury and convicted of the following three counts: Count I, driving while intoxicated as a Class D felony;[1] Count II, operating a motor vehicle while privileges are suspended as a Class D felony;[2] and Count III, possession of marijuana under 30 grams, a Class A misdemeanor.[3] He now appeals.

## Discussion and Decision

### *I. Admission of Hearsay Statements*

■ Rowe contends that the trial court improperly permitted Deputy Stoll to testify about comments made over CB radio by truck drivers who had remarked that Rowe's white truck was being driven as if by an intoxicated person. He contends that such statements are inadmissible hearsay. The State counters that the truckers' statements were not inadmissible hearsay; alternatively, if they were hearsay, their admission was harmless error.

■ Initially, we note that this Court presumes that a trial court's evidentiary rulings are correct and affords wide latitude and great deference to its decision regarding the admission of evidence. *Cason v. State*, 672 N.E.2d 74, 75 (Ind.Ct. App.1996). " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c). "Hearsay is not admissible except as provided by law or by [the Indiana Rules of Evidence]." Ind. Evidence Rule 802.

Rowe challenges the trial court's ruling on the following testimony of Officer Stoll:

Q [State]: Did you see the vehicle?

---

**1.** Ind.Code § 9–30–5–3, which governs the classification of the offense of driving while intoxicated if one has a previous conviction of operating while intoxicated.

**2.** Ind.Code § 9–30–10–16.

**3.** Ind.Code § 35–48–4–11.

A [Officer Stoll]: I didn't see it until I got into Princeton. As I was approaching State Road 64, I turned my CB on. The truck drivers, whenever they see drunk drivers, they get about as disgusted with it as what we do because they have to deal with it on a daily—

THE DEFENSE: Your Honor, I'm going to object to the attitude of truck drivers being—

THE COURT: Sustained.

THE STATE: Okay.

THE DEFENSE: He has no knowledge of the truck driver's attitude here.

THE COURT: The jury will disregard anything said regarding truck drivers' attitudes.

THE STATE: Okay.

Q: You indicated you turned on your CB radio?

A: Yes, ma'am.

Q: And what did you hear on the CB radio?

A: There were three, possibly four truckers that I could distinguish their voices that were talking about a drunk and—

THE DEFENSE: Your Honor, I'm going to object to what the truck driver was talking about as hearsay.

THE COURT: Overruled. You may proceed.

A: They were talking about a drunk driver in a white pickup. Another one came in the background and made a comment about a Mazda. I picked up the mike to the CB and asked them if this was a white Mazda pickup with a camper shell because that was what the dispatch was. One of them indicated that, yeah, he's taking the ramp going into Princeton right then. The other one came back and made a statement about, "I'm glad he's getting off there before he kills somebody."

■ The improper admission of evidence is harmless error when the convic-

tion is supported by substantial independent evidence of guilt sufficient to satisfy the reviewing court that there is no likelihood that the questioned evidence contributed to the conviction. *Bonner v. State,* 650 N.E.2d 1139, 1141 (Ind.1995). Officer Stoll testified that he had already received a dispatch regarding a white Mazda truck with a camper shell before he switched on his CB. Rowe failed three sobriety field tests, exuded an extremely strong smell of alcohol, had "badly bloodshot and partially closed" eyes and was "slumped over in his seat." A baggie containing marijuana was found next to the driver's seat, and Rowe was behind the steering wheel. We conclude that the trial court's error in allowing Officer Stoll to repeat the truckers' statements was harmless, as there was substantial independent evidence that Rowe drove while intoxicated and possessed marijuana.

## II. Doyle Violations

■ Rowe next argues that the State improperly referred to his "post-arrest silence" during the trial, in violation of the federal due process clause. Because Rowe did not object to the challenged comments at trial, we first note that failure to object to instances of improper prosecutorial remarks during trial results in waiver on appeal. *Heavrin v. State,* 675 N.E.2d 1075, 1082 (Ind.1996). We need not review such a claim of error unless it is fundamental. *See* Ind. Evidence Rule 103(d). A finding of fundamental error results only when the error is a substantial blatant violation of basic principles rendering the trial unfair. *Davis v. State,* 598 N.E.2d 1041, 1048 (Ind.1992), *cert. denied,* 510 U.S. 948, 114 S.Ct. 392, 126 L.Ed.2d 340. Furthermore, "even when procedural default does not preclude asserting the claim of error, such error may nevertheless be found harmless and thus insufficient to require reversal." *Id.*

■ In the instant case, Rowe asserts that the prosecutor's "use" of Rowe's silence at different points throughout the

trial amounts to a so-called *Doyle v. Ohio* violation, referring to the U.S. Supreme Court case in which it was held that it is improper to use, for impeachment purposes, a defendant's silence at the time of arrest and after receiving Miranda warnings. *See* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). On direct examination, Officer Stoll was questioned whether he believed Rowe was the driver of the white truck in which he was apprehended:

Q: Was there anything during your contact with this [d]efendant either at the field site or during transport or during booking that would give you some doubt as to whether this [d]efendant was the driver?

A: No, none.

Q: But what about that other person who said he was a passenger?

A: Do I think—

Q: Yes.

A: —he possibly could have been the driver? ·

Q: Yeah.

A: Absolutely not.

Q: Why?

A: I only lost sight of the vehicle for ... just a few seconds. With the amount of clutter and stuff that was in the cab of that truck, there's no way anybody could have scooted across the truck that fast. You know, it's been— well, that whole night all the contact I had with him that evening there was never a mention of, "Hey, wait a minute. I wasn't the driver."

Q: Okay.

A: Through the whole process, there was nothing said.

On re-direct examination, the following exchange occurred:

Q: [Defense counsel] asked you if the [d]efendant at any time told you the

marijuana was his and your response was, "No, he never said it was his."

A: That's correct.

Q: Did he ever make the reverse of that where he told you it was someone else's?

A: No, ma'am.

Q: Did he even comment on the marijuana?

A: No, ma'am.

Q: When he was being transported or even there out at the field site, did he ever tell you that the other guy was the driver?

A: No.

Q: Do you ever have people sometimes that tell you they're not the driver?

A: Yeah. We've had—we've had that happen before, yes.

Q: That's something people aren't shy about saying?

A: No.

The foregoing excerpts do not clearly reveal *Doyle* violations, as we understand that term, for several reasons. The *Doyle* court reasoned that "every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested [in the *Miranda* warnings]," and thus, "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." 426 U.S. at 618, 96 S.Ct. at 2244–45. In the instant case, it is not clear that Rowe was under arrest during each of the times to which the prosecutor referred at trial, nor had he been read his *Miranda* rights. Moreover, the comments were not used to impeach him, the specific "use" proscribed by *Doyle*. In its appellate brief, the State makes much of the first two distinctions, but does not address the third.[4] However,

---

**4.** We acknowledge that the U.S. Supreme Court has held that the Constitution does not prohibit the use *for impeachment purposes* of a defendant's silence *prior* to arrest, *Jenkins v.*

*Anderson*, 447 U.S. 231, 239, 100 S.Ct. 2124, 2129, 65 L.Ed.2d 86 (1980), or after arrest if no *Miranda* warnings are given, *Fletcher v. Weir*, 455 U.S. 603, 606–07, 102 S.Ct. 1309,

we conclude that despite the fact that the comments may not be characterized as *Doyle* violations per se, they suffer from an analogous impropriety, and must be analyzed under the aforementioned fundamental/harmless error analysis described in *Davis*.

In *Bieghler v. State*, 481 N.E.2d 78, 92 (Ind.1985), *cert. denied*, 475 U.S. 1031, 106 S.Ct. 1241, 89 L.Ed.2d 349 (1986), our supreme court set forth a five-part test to be undertaken by a reviewing court in determining whether a *Doyle* violation is harmless; we find it instructive in the instant case as well.[5] The five factors are (1) the use to which the prosecution puts the post-arrest silence; (2) who elected to pursue the line of questioning; (3) the quantum of other evidence indicative of guilt; (4) the intensity and frequency of the reference; and (5) the availability to the trial judge of an opportunity to grant a motion for mistrial or to give curative instructions. *Id.*

Our assessment of the record in light of the five *Bieghler* factors leads us to the conclusion that the error was harmless. The references to Rowe's silence during direct examination of Officer Stoll were few and brief in the context of the entire trial. We also find that there was a sub-stantial quantum of other evidence of Rowe's guilt, as set forth above. As such, we conclude that the prosecutor's comments on Rowe's failure to disclaim he was the driver of the white truck throughout the duration of his contact with his arresting officer were not a "substantial blatant violation of basic principles" such as to render his trial unfair. *Davis*, 598 N.E.2d at 1048.

We stress, however, the importance of engaging in the fundamental/harmless error analysis in a situation such as presented by the instant case. Not to do so would imply that it is proper for an arresting officer to forestall indefinitely the reading of *Miranda* rights to those in custody and then relay any pre-*Miranda* silence to the prosecutor, and that it would further be proper to allow the prosecutor to use the silence any way she sees fit, whether in her case in chief *or* in impeaching a defendant. We reiterate the *Doyle* court's reasoning that "every post-arrest silence is insolubly ambiguous" and caution against prosecutorial use of such silence; even if it does not fall squarely within the *Doyle* rubric, it carries the risk of becoming a "substantial blatant violation of basic principles" and thereby rendering the trial fundamentally unfair and subject to reversal.[6]

1312, 71 L.Ed.2d 490 (1982). Again, however, those cases are distinguishable from the instant case, because they address the constitutional protection of a defendant's silence once he decides to testify; Rowe never took the stand. Furthermore, the Supreme Court has also noted that where a defendant's silence is used not as impeachment but as affirmative proof in the case in chief, as in the instant case, "the constitutional violation might thus be especially egregious because, unlike *Doyle*, there was no risk that exclusion of the evidence would merely provide a shield for perjury." *Wainwright v. Greenfield*, 474 U.S. 284, 292 n. 8, 106 S.Ct. 634, 644 n. 8, 88 L.Ed.2d 623 (1986).

5. *See, e.g., Higgins v. State*, 690 N.E.2d 311, 312–13 (Ind.Ct.App.1997), discussing *Doyle* and *Bieghler, supra,* and *McCollum v. State*, 582 N.E.2d 804 (Ind.1991), reiterating the five-part test for harmless error of prosecutorial use of post-arrest silence, and holding that the fact that a defendant did not testify at trial, and thus did not have his credibility called into question, was a distinction without a difference: "it may be immediately seen that the five part criteria set forth in *McCollum* and *Bieghler* may be applied whether or not the defendant takes the stand in his own defense."

6. Rowe also claims fundamental error regarding two separate comments made by the prosecuting attorney during her closing and rebuttal closing arguments. For the same reasons we decline to find fundamental error under the *Doyle* analysis, we decline to find fundamental error for this claim of error. *See Heavrin v. State*, 675 N.E.2d 1075, 1082 (Ind. 1996); *Moore v. State*, 669 N.E.2d 733, 739 (Ind.1996) ("A court may affirm a conviction despite an improper prosecutorial comment if it can 'declare a belief that [the comment] was harmless beyond a reasonable doubt.' ").

### III. Notice of License Suspension

■ Finally, Rowe challenges the sufficiency of the evidence presented at trial to establish his knowledge of his prior valid license suspension with respect to the driving while suspended charge. Specifically, Rowe contends that the State did not prove that its notice advised him of his right to appeal or seek judicial review of his status as a habitual traffic offender. *See* Ind.Code § 9–30–10–5(c).

At Rowe's trial, the State entered into evidence without objection a redacted copy of Rowe's driving record, which indicated that due to his conviction as a habitual traffic offender on September 26, 1996, the Bureau of Motor Vehicles ("BMV") mailed a notice of license suspension to Rowe on September 27, 1996, advising him that his license would be suspended for ten years effective October 26, 1996. However, a copy of that notice was not offered into evidence, nor was any proof of the notice's contents presented at trial.

■ A conviction for operating a motor vehicle while one's privileges are suspended as a habitual traffic violator requires proof by the State of three elements: (1) that the violator operated a motor vehicle; (2) while his driving privileges were suspended, and (3) while he knew or should have known that his privileges were suspended because the BMV had classified him a habitual traffic offender. *Brown v. State,* 677 N.E.2d 517, 518 (Ind.1997). This Court has held that to establish the second and third elements, both proof of mailing of a notice of suspension and proof of the contents of the notice are evidentiary prerequisites to establishing a valid license suspension. *See Johnson v. State,* 698 N.E.2d 821, 822 (Ind.Ct.App.1998); *Vasquez v. State,* 700 N.E.2d 1157, 1158 (Ind.Ct.App.1998). There is no evidence in the record regarding the contents of the notice mailed to Rowe on September 27, 1996. Thus, the State failed to prove one of the elements required for Count II, operating a motor vehicle while privileges are suspended as a Class D felony, and

Rowe's conviction on that charge must be vacated.

### Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed in part and reversed and remanded in part, with instructions to vacate Rowe's conviction for Count II, operating a motor vehicle while privileges are suspended as a Class D felony.

KIRSCH and DARDEN, JJ., concur.