## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 28 2018, 9:07 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Marquelle Smith,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | September 28, 2018<br><br>Court of Appeals Case No.<br>82A01-1711-CR-2730<br><br>Appeal from the Vanderburgh<br>Circuit Court<br><br>The Honorable David D. Kiely,<br>Judge<br><br>Trial Court Cause No.<br>82C01-1702-F4-1040 |

**Mathias, Judge.**

[1] Following a jury trial in Vanderburgh Superior Court, Marquelle Smith ("Smith") was convicted of Level 5 felony possession of a narcotic drug, Class

B misdemeanor possession of marijuana, and Class B misdemeanor criminal mischief. The trial court sentenced Smith to an aggregate term of six years of incarceration. Smith appeals and presents one issue for our review, which we restate as whether the trial court committed fundamental error by permitting a witness for the State to refer to Smith's post-arrest, pre-*Miranda* silence.

[2] We affirm.

## Facts and Procedural History

[3] On the night of February 20, 2017, officers from the Evansville Police Department ("EPD") were dispatched to the area of Jefferson Avenue and South Bedford avenue in Evansville, Indiana, to a report of shots fired and people arguing over a handgun. EPD Officers Trendon Amuzie ("Officer Amuzie") and Blake Hollins ("Officer Hollins") responded to the call and arrived to see Smith and two other men fighting over an object, which they suspected might be a weapon. EPD Officer Hebert Adams ("Officer Adams") soon joined his fellow officers.

[4] The officers exited their patrol cars and approached the men with their weapons drawn. The officers identified themselves as police officers and ordered the men to cease their struggling and place their hands in the air. The other two men complied with the officers' commands, but Smith walked away and got into his vehicle. The police ordered Smith to stop, but he ignored them and started his vehicle. Smith then looked directly at Officer Adams and drove his car at Adams, who later testified that Smith "was aiming straight at me." Tr. Vol. 2,

p. 174. Officer Adams jumped out of the path of Smith's vehicle to avoid being hit. Officers Adams and Hollins fired several shots at the direction of Smith's vehicle.

Smith was unharmed and attempted to turn into an alleyway. Smith, however, missed the turn and struck a nearby shed. The three officers, now joined by two other EPD officers, approached the car and ordered him to show his hands and exit the vehicle. When Smith again refused to comply, the officers attempted to forcibly remove Smith, but he continued to resist by clinging to the steering wheel. The police finally used an electronic stun device on Smith and were able to remove him from the car. Undeterred, Smith was verbally combative with the officers and threatened them. The police had to use both handcuffs and leg restraints to prevent Smith from kicking them.

When the officer's searched Smith's person incident to arrest, they discovered two packages containing what appeared to be illicit drugs. One package contained a leafy green substance that appeared to be, and later tested positive as, marijuana. The other package contained an off-white substance that field tested positive as cocaine. However, subsequent laboratory spectrographic analysis determined that the substance was actually heroin. Laboratory measurements revealed that the first package contained 20.57 grams of marijuana, and the other package contained 7.45 grams of heroin.

On February 22, 2017, the State charged Smith with one count of Level 4 felony possession of cocaine (later amended to Level 5 felony possession of a

narcotic drug), two counts of Level 5 felony attempted battery by means of a deadly weapon, one count of Class B misdemeanor possession of marijuana, and one count of Class B misdemeanor criminal mischief.

[8] A two-day jury trial commenced on September 27, 2017, and, on the first day of trial, Smith requested to represent himself. After questioning Smith, the trial court permitted Smith to proceed *pro se* but appointed standby counsel to assist Smith. One of the State's witnesses was EPD Detective Brent Melton ("Detective Melton"), who was involved in the investigation of the incident with Smith. The prosecuting attorney asked Detective Melton if he had any interaction with Smith on the night of February 20, 2017. Detective Melton testified as follows:

> It wasn't very pleasant. I tried to interview him at Headquarters in a recording room, he wouldn't tell me his name, didn't even get the chance to read him his rights, we didn't even get to that point, the interview ended very quickly. It wasn't a pleasant encounter.

Tr. Vol. 2, p. 242. Smith did not object to this testimony.

[9] At the conclusion of the trial, the jury found Smith guilty of Level 5 felony possession of a narcotic drug, Class B misdemeanor possession of marijuana, and Class B misdemeanor criminal mischief. The jury acquitted Smith on the remaining counts.

[10] On October 27, 2017, the trial court sentenced Smith to concurrent terms of six years of incarceration on the Level 5 felony conviction, and 180 days on both

misdemeanor convictions. That same day, Smith filed what he styled as a motion to correct error,[1] which the trial court immediately denied. Smith now appeals.

## Standard of Review

Smith's sole claim on appeal is that the trial court committed fundamental error by permitting Detective Melton to refer to Smith's post-arrest, pre-*Miranda* silence. Questions regarding the admission of evidence are entrusted to the sound discretion of the trial court. *Fuqua v. State*, 984 N.E.2d 709, 713 (Ind. Ct. App. 2013), *trans. denied*. Accordingly, on appeal, we typically review the trial court's decision only for an abuse of that discretion. *Id*. The trial court abuses its discretion only if its decision regarding the admission of evidence is clearly against the logic and effect of the facts and circumstances before it, or if the court has misinterpreted the law. *Id*.

At trial, however, Smith did not object to the evidence he now claims was improperly admitted. Smith therefore argues, as he must, that the admission of this evidence was so egregious as to amount to fundamental error. *See Sampson v. State*, 38 N.E.3d 985, 992 (Ind. 2015) (noting that the failure to object at trial forfeits the issue for review unless fundamental error occurred). The

---

[1] This *pro se* motion was filed before the trial court had entered a judgment of conviction, but the trial court did not hear argument or consider the motion until after it had entered judgment. Smith's motion argued that Smith possessed both cocaine and heroin, neither in an amount sufficient to constitute a Level 5 felony, and that the State had improperly combined the two substances in order to reach the weight necessary for a Level 5 felony. The trial court rejected Smith's unsupported allegations and denied the motion.

fundamental error doctrine is an exception to the general rule that the failure to object at trial constitutes procedural default or "waiver" precluding consideration of the issue on appeal. *Id*. The fundamental error exception is "extremely narrow" and reaches only those errors that are so blatant that the trial judge should have taken action *sua sponte*. *Knapp v. State*, 9 N.E.3d 1274, 1281 (Ind. 2014) (citing *Brewington v. State*, 7 N.E.3d 946, 974 (Ind. 2014)). The fundamental error exception applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. *Sampson*, 38 N.E.3d at 992. Thus, "fundamental error is a daunting standard that applies 'only in egregious circumstances*." Knapp,* (quoting *Brown v. State*, 799 N.E.2d 1064, 1068 (Ind. 2003)).

## Discussion and Decision

[13] The use of a defendant's post-arrest, post-*Miranda* warning silence is strictly prohibited, whether it is used as substantive evidence or for impeachment purposes. *Willsey v. State*, 698 N.E.2d 784, 791 (Ind. 1998) (citing *Doyle v. Ohio*, 426 U.S. 610 (1976); *Wainwright v. Greenfield*, 474 U.S. 284 (1986)). The use of pre-arrest, post-*Miranda* warning silence is similarly protected. *See Kubsch v. State*, 784 N.E.2d 905, 914 (Ind. 2003) (citing *Kappos v. Hanks*, 54 F.3d 365, 368

(7th Cir. 1995) ("[T]he fact that an arrest ha[s] not yet occurred does not render *Doyle* inapplicable.")).[2]

[14] Although the United States Supreme Court has yet to directly address the question, Indiana courts have held that post-arrest, pre-*Miranda* silence cannot be used as substantive evidence in the State's case-in-chief.[3] *Peters v. State*, 959 N.E.2d 347, 353 (Ind. Ct. App. 2011) (citing *Akard v. State*, 924 N.E.2d 202, 209 (Ind. Ct. App. 2010), *trans. granted, summarily aff'd in relevant part*, 937 N.E.2d 811 (Ind. 2010); *Rowe v. State*, 717 N.E.2d 1262, 1267 (Ind. Ct. App. 1999)). A defendant's post-arrest, pre-*Miranda* silence may, however, be used for impeachment purposes. *Peters*, 959 N.E.2d at 353 (citing *Fletcher v. Weir*, 455 U.S. 603, 607 (1982)).

[15] In the present case, we cannot say that Detective Melton's testimony amounted to fundamental error. Detective Melton did not directly mention Smith's silence or intimate that such silence was proof of his guilt. In describing his interaction with Smith, Detective Melton stated that when he tried to interview Smith, he was so combative that he would not even give his name. Melton also testified

---

[2] The use of pre-arrest, pre-*Miranda* silence is not prohibited by the Fifth Amendment if the defendant does not invoke the privilege against self-incrimination. *Cameron v. State*, 22 N.E.3d 588, 592 n.1 (Ind. Ct. App. 2014) (citing *Salinas v. Texas*, 570 U.S. 178, 181–83 (2013) (plurality holding that a defendant's pre-arrest, pre-*Miranda* silence was not protected by the Fifth Amendment where the defendant simply remained silent and did not invoke his right against self-incrimination); *see also Barton v. State*, 936 N.E.2d 842, 851 (Ind. Ct. App. 2010) (noting that a prosecutor's comment on a defendant's pre-arrest, pre-*Miranda* silence is not prohibited) (citing *Teague v. State*, 891 N.E.2d 1121, 1124 (Ind. Ct. App. 2008)), *trans. denied*; *Hilliard v. State*, 609 N.E.2d 1167, 1170 (Ind. Ct. App. 1993)).

[3] The State requests that we reconsider our precedent on this matter. We decline.

that he did not get a chance to read Smith his *Miranda* rights. The only question Detective Melton apparently asked was Smith's name. A defendant does not have a Fifth Amendment right to withhold such non-incriminating information. *See Loving v. State*, 647 N.E.2d 1123, 1126 (Ind. 1995) (noting that administrative questions such as a defendant's name are "removed from the requirements of *Miranda*") (citing *Pennsylvania v. Muniz*, 496 U.S. 582, 601–02 (1990)). Moreover, the prosecuting attorney did not further mention Smith's silence, nor did the State argue that his refusal to answer questions was indicative of guilt.

[16]     Furthermore, the evidence against Smith was rather strong. The State introduced police body-camera footage of the confrontation with Smith, including footage of the illicit drugs recovered from Smith. And, although he later tried to deny it, Smith conceded during his opening statement that he possessed marijuana. *See* Tr. Vol. 2, p. 114 ("*I know I'm guilty of marijuana*, but as far as tryin[g] to harm the Officers, I would never do that.") (emphasis added).

[17]     Smith attempts to undermine the State's evidence by noting that the other substance found on his person initially field tested positive for cocaine. But the State's expert witness from the Indiana State Police Laboratory testified with scientific certainty that the substance found on Smith was heroin. He explained the field test as follows:

> A field test is a test where a certain chemical or a certain agent is applied to a drug and a color results from it. And that can be

indicative of the presence of something. *The problem with these tests are that they're not specific. So many things could yield a positive color test.* That's why we submit things to the laboratory and do a lot more specific testing than that. *Cocaine is one that's known to be - that field test giving a positive for a variety of things*. And so as such, all you could say from it is it might be cocaine, but it certainly is not that it is cocaine.

Tr. Vol. 3, pp. 30–31 (emphasis supplied). This witness further testified that "[t]here was no indication whatsoever there was any cocaine in this item," and that he was certain the substance was heroin because "I have no other conclusion to reach when mass spectrum gives a perfect heroin spectrum and everything else is consistent with that. There's no other conclusion I could possibly reach." *Id*. at 31.

[18] Given the overwhelming nature of the evidence against Smith and the fact that the brief allusion to Smith's silence was not further mentioned or relied upon by the State as substantive evidence, we cannot say that Detective Melton's testimony was so egregious as to amount to fundamental error. We therefore affirm the judgment of the trial court.

[19] Affirmed.

Bailey, J., and Bradford, J., concur.