## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 18 2019, 9:24 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald E.C. Leicht
Kokomo, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jared Hunt,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 18, 2019

Court of Appeals Case No.
18A-CR-1003

Appeal from the Howard Superior Court

The Honorable William C. Menges, Jr., Judge

Trial Court Cause No.
34D01-1707-F2-870

**Mathias, Judge.**

[1] Following a jury trial in Howard Superior Court, Jared Hunt ("Hunt") was convicted of Level 4 felony possession of a narcotic drug and Class B

misdemeanor false informing. Hunt appeals and presents three issues, which we restate as:

> I. Whether the trial court erred in denying Hunt's motion for discharge pursuant to Indiana Criminal Rule 4(B);
>
> II. Whether the trial court abused its discretion by admitting evidence regarding Hunt's statements and silence even though he was not advised of his *Miranda* rights; and
>
> III. Whether Hunt's conviction for false informing is constitutionally defective.

We affirm.

## Facts and Procedural History

On July 22, 2017, Kokomo Police Department Officers Ryan Shuey ("Officer Shuey") and Aaron Tarrh ("Officer Tarrh") went to a motel to execute an arrest warrant for Jaide Spencer ("Spencer"), as the police had received information that Spencer was staying at the motel. Officer Tarrh knocked on the door of the room that Spencer had rented. Officer Shuey remained outside the motel on the sidewalk. After Officer Tarrh knocked on the door, he heard some commotion inside the room and heard a window open. Outside, Officer Shuey saw a man, later identified as Hunt, open the window and look around, as if preparing to flee. But when Hunt saw Officer Shuey, he went back inside the room. Officer Shuey looked inside the window but could not see Hunt, who had hidden in the corner. Officer Tarrh continued to knock on the door and announce the police presence.

[4] Eventually, Hunt came out from hiding and opened the door for Officer Tarrh, who placed Hunt in handcuffs. Officer Tarrh asked Hunt if Spencer was in the room, and Hunt called for Spencer, who then came out from the bathroom. Spencer was then arrested on the warrant. Officer Shuey, who had by this time entered the room, asked Hunt his name. Hunt falsely told the police that he was "Brooks Smith." Tr. Vol. II, pp. 49, 66–67. Hunt claimed not to have any identification on him when asked. And when Officer Tarrh asked Hunt what his date of birth and age were, Hunt stated that he was born on that day in 1981, and that it was his thirty-seventh birthday. This aroused Officer Tarrh's suspicions because, if Hunt had been born on that day in 1981, he would have been only thirty-six, not thirty-seven years old. Officer Tarrh then pulled up a photograph of Brooks Smith. Although Hunt bore some resemblance to Smith, Hunt had blue eyes whereas Smith had brown eyes. Smith also had a nose piercing, whereas Hunt did not. Despite the photographic evidence to the contrary, Hunt still insisted that he was Smith.

[5] The police then requested and obtained a warrant to search the motel room. When executing the search warrant, the police found 24.67 grams of heroin, a metal box containing a blue zip-top bag with powdery residue, plastic bags, a scale, and a syringe. Inside a wallet, the police found a paper identification with Hunt's photograph and name, correctly identifying him as Jared Hunt.

[6] On July 25, 2017, the State charged Hunt with Level 2 felony dealing in a narcotic drug, Level 4 felony possession of a narcotic drug, Level 6 felony maintaining a common nuisance, Level 6 felony unlawful possession of a

syringe, and Class B misdemeanor false informing. While incarcerated awaiting trial, Hunt wrote a letter to Spencer that referred to Spencer "taking the case" on behalf of Hunt, as Spencer would likely be given a less harsh sentence than would Hunt, who had a more serious criminal history. Ex. Vol., State's Ex. 14. In the letter, Hunt repeatedly thanked Spencer for taking the blame for the drugs.

[7] At the initial hearing held on August 3, 2017, Hunt requested a speedy trial pursuant to Indiana Criminal Rule 4(B), and the trial court scheduled a jury trial for September 29, 2017. Hunt's first jury trial commenced on September 29, 2017, and a jury was selected. The trial recommenced on October 2, 2017, but the trial court declared a mistrial after opening statements. Hunt then again requested a speedy trial pursuant to Criminal Rule 4(B), and the trial court scheduled the second trial for November 17, 2017.

[8] On November 17, 2017, however, the trial court continued the trial to January 26, 2018, due to court congestion. Hunt filed an objection on December 11, 2017, to the trial court's continuation of his trial. In his objection, Hunt stated that the trial court had continued his trial so that a trial in the case of *State v. Gary Cooper*, Cause No. 34D01-1610-F6-1117, could take place. Hunt claimed that Cooper had filed for a speedy trial after Hunt had requested one.[1] According to the publicly accessible electronic chronological case summary

---

[1] Despite claiming in his written objection that Cooper did file a request for a speedy trial, Hunt now asserts, incorrectly, on appeal that "Cooper had never requested a speedy trial." Appellant's Br. at 10.

("CCS") in the *Cooper* case, Cooper was charged on October 28, 2016, and he requested a speedy trial on January 13, 2017. *See Cooper*, No. 34D01-1610-F6-1117, CCS Entry Jan. 17, 2017.[2] Cooper's trial had initially been set for January 27, 2017, but was delayed and continued several times and finally held on November 17, 2017, which is why the trial court continued Hunt's trial scheduled for that day.[3]

[9] On January 12, 2018, Hunt filed a motion for discharge under Criminal Rule 4(B), claiming that he was entitled to discharge because he had not been brought to trial within seventy days of his motion for a speedy trial.

[10] On January 26, 2017, the date the trial court had set for Hunt's trial after the first continuance, the court again continued the trial sua sponte, this time rescheduling Hunt's trial for February 2, 2018, a one-week delay. Again, the trial court stated that the reason for the continuance was court congestion,

---

[2] We take judicial notice of this information from the trial court's records, which are available on the unified, statewide Odyssey case-management system and accessible to the public at https://mycase.in.gov. We take judicial notice of the records in the *Cooper* case. *See* Ind. Evidence Rule 201(b)(5) (permitting courts to take judicial notice of "records of a court of this state[.]"; *Horton v. State*, 51 N.E.3d 1154, 1161 (Ind. 2016) (taking judicial notice of trial court's publicly available records); *In re D.P.*, 72 N.E.3d 976, 984 (Ind. Ct. App. 2017) (taking notice of trial court records available through Indiana's implementation of the Odyssey case-management system).

[3] *See id.*, CCS Entry, Nov. 4, 2016 (setting trial date of Jan. 27, 2017); Jan. 17, 2017 (speedy trial request filed Jan. 13, 2017, trial confirmed for Jan. 27, 2017); Jan. 25, 2017 (defendant files notice of plea agreement, plea hearing set for March 14, 2017); Mar. 14, 2017 (plea hearing); Mar. 29, 2017 (defendant files motion on Mar. 27, 2017 to withdraw plea); Apr. 20, 2017 (trial court grants motion to withdraw plea on April 11, 2017 and sets trial for May 19, 2017); May 22, 2017 (trial continued to June 23, 2017); June 13, 2017 (trial continued on defendant's motion to July 28, 2017); July 19, 2017 (trial continued on defendant's motion to Sept. 29, 2017); Oct. 2, 2017 (continuing trial to Oct. 27, 2017 due to court congestion); Oct. 27, 2017 (continuing trial to Nov. 17, 2017 due to court congestion); Nov. 17, 2017 (jury trial commences).

specifically, a jury trial in the case of *State v. Christopher Carter*, Cause No. 34D01-1610-F3-1072,[4] was also scheduled for that day. Carter had been charged on October 14, 2016,[5] and appears to have been in custody while awaiting trial.[6] Carter's trial was originally scheduled for January 12, 2017,[7] but was continued several times.[8]

[11] Hunt's three-day jury trial began on February 2, 2018. At the beginning of the trial, Hunt renewed his motion for discharge, which the trial court denied. At the conclusion of the trial on February 6, 2018, the jury found Hunt guilty of Level 4 felony possession of a narcotic drug and Class B misdemeanor false informing but not guilty of Level 6 felony maintaining a common nuisance and Level 6 felony unlawful possession of a syringe. The jury was unable to reach a verdict on the charge of Level 2 felony dealing in a narcotic drug, and the trial court declared a mistrial on that count. On April 2, 2018, the trial court sentenced Hunt to twelve years of incarceration on the Level 4 felony

---

[4] We also take judicial notice of the trial court's records in the *Carter* case. *See* note 2, *supra*.

[5] *See id.*, CCS Entry Oct. 14, 2016.

[6] *See id.*, CCS Entry Mar. 2, 2018 (noting Carter had accrued 504 actual days of credit for time served).

[7] *See id.*, CCS Entry Oct. 20, 2016 (setting trial for January 27, 2017).

[8] *See id.* CCS Entry Jan. 12, 2017 (continuing trial to April 28, 2017); May 1, 2017 (noting that trial court had continued trial due to May 19, 2017, due to court congestion); May 8, 2017 (continuing trial on State's motion to June 23, 2017); June 23, 2017 (continuing trial to July 28, 2017, due to court congestion); July 19, 2017 (continuing trial to Aug. 25, 2017); Aug. 11, 2017 (continuing trial on defendant's motion to Oct. 27, 2017); Oct. 27, 2017 (continuing trial to Nov. 17, 2017, due to court congestion); Nov. 17, 2017 (continuing trial to Jan. 26, 2018, due to court congestion); Jan. 26, 2018 (jury trial).

conviction and a concurrent term of 180 days for the Class B misdemeanor conviction. Hunt now appeals.

## I. Motion for Discharge Under Criminal Rule 4(B)

Hunt first argues that the trial court erred by denying his motion for discharge under Criminal Rule 4(B). This rule provides in relevant part:

> If any defendant held in jail on an indictment or an affidavit shall move for an early trial, *he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion*, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, *or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar*. Provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as set forth in subdivision (A) of this rule. Provided further, that *a trial court may take note of congestion or an emergency without the necessity of a motion, and upon so finding may order a continuance. Any continuance granted due to a congested calendar or emergency shall be reduced to an order, which order shall also set the case for trial within a reasonable time.*

Ind. Criminal Rule 4(B)(1) (emphases added).

"The broad goal of Indiana's Criminal Rule 4 is to provide functionality to a criminal defendant's fundamental and constitutionally protected right to a speedy trial." *Austin v. State,* 997 N.E.2d 1027, 1037 (Ind. 2013). Criminal Rule 4 places an affirmative duty on the State to bring the defendant to trial, but it is "not intended to be a mechanism for providing defendants a technical means to escape prosecution." *Id*. As explained in *Austin*:

Criminal Rule 4(B) presents at least three hurdles at the trial court level: First, when a criminal defendant files a motion for a speedy trial, the trial court must set the defendant's case for trial within seventy days—which might require, to an extent we discuss below—a re-prioritization of its current caseload. Second, if the trial court finds it cannot accomplish this prioritization and bring the defendant to trial within seventy days because of court congestion, it may order a continuance—and that finding of congestion is then subject to challenge by way of the defendant's motion for discharge. And third, if the trial court orders such a continuance, it still must keep sight of the defendant's constitutional right to a speedy trial—and Rule 4(B) therefore permits the continuance only to the extent that the defendant proceeds to trial within a reasonable time after the close of the seventy-day window.

*Id. at* 1037–38 (Ind. 2013) (some citations omitted).

[14] On appeal, a trial court's finding of congestion is presumed valid and need not be contemporaneously explained or documented by the court. *Id*. at 1039 (citing *Clark v. State*, 659 N.E.2d 548, 552 (Ind. 1995)). A defendant may challenge a trial court's congestion finding by filing a motion for discharge and demonstrating that the trial court's finding was factually or legally incorrect. *Id.* Such proof is prima facie adequate for discharge, absent further findings by the trial court explaining the congestion. *Id*. In such a case, the trial court's explanations are accorded deference, and the defendant will be afforded relief only on a showing of clear error. *Id*. If the issue on appeal is a pure question of law, our review is, of course, de novo. *Id*. And the ultimate determination of the reasonableness of the trial court's findings depends on the facts and circumstances of each case. *Id*. Under the clearly-erroneous standard, we accord

the trial court's findings reasonable deference, and we neither reweigh evidence or judge witness credibility. *Id*. at 1040. We consider only the probative evidence and reasonable inferences supporting the judgment and reverse only on a showing of clear error. *Id*. Clear error is that which leaves us with a definite and firm conviction that a mistake has been made. *Id*.

[15] Here, Hunt claims that the trial court erred by twice continuing his trial due to court congestion. Specifically, he argues that the trial court should not have continued his retrial[9] so that the trials in the *Cooper* and *Carter* cases could take place. The court in *Austin* summarized the law of prioritizing cases under Criminal Rule 4(B) as follows:

> The constitutional protections embodied by Criminal Rule 4 necessitate a prioritized treatment when a defendant files a motion pursuant to Rule 4(B)—a treatment beyond simply assigning that defendant's case to the next presently vacant trial setting on the calendar.
>
> > Rather, it must be assigned a meaningful trial date within the time prescribed by the rule, *if necessary superseding trial dates previously designated for civil cases and even criminal cases in which Criminal Rule 4 deadlines are not imminent.* We recognize, however, that emergencies in either criminal or civil matters may occasionally interfere with this scheme. Similarly, there may be major, complex trials that have long been scheduled or that pose significant extenuating circumstances to litigants and witnesses, which will, on

---

[9] Hunt makes no argument that his first trial was untimely, and rightly so. Hunt first moved for a speedy trial on August 3, 2017, and his first trial commenced on September 29, 2017, just fifty-seven days after his speedy trial request.

rare occasions, justify application of the court congestion
or exigent circumstances exceptions.

*Thus, courts recognize that Rule 4(B) does not necessarily present a
bright-line approach whereby all other cases must yield to the defendant
who files a speedy trial motion.*

For example, in the criminal arena speedy trial motions are
subject to their own internal prioritization. *Where a longer-
incarcerated defendant moves for a speedy trial, his or her request should
generally take priority over a more recently charged movant.* But this
would not necessarily be the case if, say, the more recently
charged defendant's Criminal Rule 4 deadline was significantly
more imminent and there remained time after that deadline to
hold the trial of the longer-incarcerated defendant before his or
her deadline. Where the trial court's calendar can satisfy both
Rule 4 deadlines, the longer-incarcerated defendant need not
necessarily go first. After all, Rule 4 effectuates a "speedy" trial—
not necessarily the "next" trial. *But at the same time, and absent
extenuating circumstances, a defendant seeking a speedy trial would
almost invariably be entitled to a trial setting ahead of any criminal
defendant who had not filed a Rule 4 motion.*

\* \* \*

[I]n order for the meaning of the rule not to be eviscerated, it is
essential that courts honor requests made for speedy trials by
scheduling trial dates within the time prescribed by the rule. And
we therefore have referred to this as a requirement that speedy
trial motions receive particularized priority treatment. *But we do
not intend to suggest that a trial judge must necessarily wipe his or her
calendar clean*, or jam a trial into an opening in a schedule or
courtroom that lacks the space, time, and resources to
accommodate it. They must, however, be mindful of their
calendar and the seventy-day window and exercise all reasonable
diligence to preserve the defendant's right to a speedy trial.

But at the same time, the aim of providing a speedy trial should never risk an unfair or incomplete trial. Rather, *the trial judge should set the defendant's trial for the first setting not already occupied by a superseding speedy trial request or exceptional civil matter*, or, if need be, create a new trial setting if time allows for the availability of a courtroom, witnesses, jury pool, and other necessary resources.

*Austin*, 997 N.E.2d at 1040–41 (quoting *Clark*, 659 N.E.2d at 551–52) (other citations and quotations omitted) (emphases added).

[16] With regard to the first continuance so that the trial in *Cooper* could take place, we first observe that, contrary to Hunt's claim on appeal, the defendant in *Cooper* clearly did file a motion for a speedy trial pursuant to Criminal Rule 4(B) on January 13, 2017, which pre-dates Hunt's own speedy trial motion by several months. Moreover, Cooper was charged on October 28, 2016, almost nine months before Hunt was charged. And although Cooper moved to continue his trial three times, the trial court had *sua sponte* continued Cooper's trial twice before due to court congestion. We therefore conclude that the trial court did not err by prioritizing Cooper's trial ahead of Hunt's trial.

[17] With regard to the *Carter* case, things are not as clear cut. In *Carter*, the defendant was charged on October 14, 2016, several months before Hunt was charged. Though Carter did not file a motion for a speedy trial pursuant to Criminal Rule 4(B), Carter was in custody and his trial had been continued at least four times by the trial court due to congestion, once on the State's motion, and once on his own motion. Thus, on January 26, 2018, when both Carter and

Hunt's trials were scheduled, Carter had been in custody far longer than Hunt. And the trial court continued Hunt's trial by only one week.

[18] Hunt would have us draw a bright-line rule and hold that any case in which the defendant has filed a motion for a speedy trial pursuant to Criminal Rule 4(B) must always take precedence over a case in which such a motion has not been filed. We rejected a similar request in *McKay v. State*, 714 N.E.2d 1182 (Ind. Ct. App. 1999), where the defendant's trial was continued due to the trial of another defendant who had not filed a request for a speedy trial. On appeal, we held that the mere fact that the other defendant did not file a speedy trial request was, by itself, "insufficient to establish that the [trial] court's finding of congestion was clearly erroneous." *Id.* at 1188. Our supreme court in *Austin* cited *McKay* with approval. *See Austin*, 997 N.E.2d at 1040 (rejecting bright-line rule) (citing *McKay*, 714 N.E.2d at 1188).

[19] Thus, even though Hunt had requested a speedy trial, and Carter had not, this alone is insufficient to establish that the trial court erred continuing Hunt's trial so that Carter's trial could take place. *See id.* As noted above, Carter had been charged months before Hunt, his trial had repeatedly been continued, and Carter remained in custody during the pendency of his case. Moreover, the trial court continued Hunt's trial for a mere seven days so that Carter's trial could take place.

[20] We therefore conclude that the trial court's congestion determinations were not clearly erroneous. Because Hunt has not shown clear error in the trial court's

congestion findings, we cannot say that the court erred by denying Hunt's motion for discharge.

## II. Admission of Hunt's Statements and Silence

[21] Hunt next contends that the trial court improperly admitted evidence of what he said, and did not say, when he was in custody but had not been advised of his *Miranda* rights. Questions regarding the admission of evidence are entrusted to the sound discretion of the trial court. *Fuqua v. State*, 984 N.E.2d 709, 713 (Ind. Ct. App. 2013), *trans. denied*. Accordingly, on appeal, we review the trial court's decision only for an abuse of that discretion. *Id.* A trial court abuses its discretion only if its decision regarding the admission of evidence is clearly against the logic and effect of the facts and circumstances before it, or if the court has misinterpreted the law. *Id.*

*A. Hunt's False Statement Regarding his Name*

[22] Hunt first claims that the trial court abused its discretion by admitting Officer Shuey's testimony that the police asked Hunt for his name and that Hunt responded by telling the police that he was Brooks Smith. *See* Tr. Vol. II, p. 49–50. Hunt, however, made no objection to Officer Shuey's testimony on this matter. Officer Shuey later testified, again without objection, that Hunt gave him a false name. *Id.* at 66–67. And Officer Tarrh also testified without objection that Hunt gave them a false name. *Id.* at 81.

[23] Because Hunt failed to make a contemporaneous objection, he failed to preserve any claim of error with regard to the admission of this testimony. *See*

*Brittain v. State*, 68 N.E.3d 611, 618 (Ind. Ct. App. 2017) (noting that a contemporaneous objection at the time the evidence is introduced at trial is required to preserve the issue for appeal), *trans. denied* (citing *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010)).[10] Notwithstanding Hunt's failure to preserve this issue, he would still not prevail.

[24] Hunt claims that, because he had not been advised of his *Miranda* rights, his statement that he was Brooks Smith should have been inadmissible. However, "there are some police questions which do not fall within *Miranda*'s purview." *Matheny v. State*, 983 N.E.2d 672, 677 (Ind. Ct. App. 2013), *aff'd on reh'g*, 987 N.E.2d 1169, *trans. denied*. Specifically, "[q]uestions regarding 'name, address, height, weight, eye color, date of birth, and current age' are outside the scope of *Miranda*'s coverage." *Id*. (quoting *Pennsylvania v. Muniz*, 496 U.S. 582, 601 (1990)).

[25] Hunt's responses to the officers' questions regarding his name are therefore not protected by *Miranda*, and the officer's testimony that Hunt gave them a false name was admissible. *See United States v. Brown*, 101 F.3d 1272, 1274 (8th Cir. 1996) (holding that non-*Mirandized* defendant's statement providing false name to investigating officers was admissible because asking his name fell within the

---

[10] Hunt did file a motion in limine seeking to exclude certain portions of the video taken from the police body cameras, citing *Miranda*. But it is well established that a pre-trial motion in limine is insufficient to preserve a claim of error for appeal and that a contemporaneous objection is required at the time the evidence is admitted. *See Laird v. State*, 103 N.E.3d 1171, 1175 (Ind. Ct. App. 2018), *trans. denied*. Additionally, the fact that Hunt later made a contemporaneous objection to the admission of the body camera video does not act to preserve any error in the admission of the officers' testimony. *See Brown*, 929 N.E.2d at 207 (rejecting defendant's claim that he could "resurrect" an objection after the evidence had already been admitted).

scope of routing booking questions not subject to *Miranda*); *United States v. Kadem*, 317 F. Supp. 2d 239, 242 (W.D.N.Y. 2004) ("One who makes false statements or commits perjury does so at his peril and the *Miranda* warnings were not designed to advise those in custody not to lie.").

*B. Hunt's Failure to Disclaim Ownership of the Items in the Motel Room*

[26] Hunt next claims that the trial court erred by admitting testimony that he failed to disclaim ownership of the items in the motel room. Hunt specifically refers to the following portion of Officer Tarrh's testimony on direct examination:

> Q.        You did all that in the video, searching the room and he's sitting there. At any point did he make a comment, hey, none of that's mine?
>
> [Defense]: Your Honor, I'm going to object at this point *as to any comments made.* This is called admission and no waive on Miranda statements.
>
> [Court]:   Overruled.
>
> Q.        Did he ever make a comment saying, hey, guys, that's not mine; I don't know what that is?
>
> A.        No.

Tr. Vol. II, pp. 146–47 (emphasis added).

[27] Hunt argues on appeal that this testimony improperly referred to Hunt's silence. This, however, was not the basis of Hunt's objection, which referred to any "comments made" by Hunt. It is well settled that "[a] party may not object to the admission of evidence on one ground at trial and seek reversal on appeal

based on a different ground." *Boatner v. State*, 934 N.E.2d 184, 187 (Ind. Ct. App. 2010) (citing *Malone v. State*, 700 N.E.2d 780, 784 (Ind. 1998)). Thus, Hunt has also failed to preserve any error with regard to the admission of this testimony.[11]

[28] Moreover, Hunt's argument regarding the admission of this evidence is, at best, sparse. Hunt's argument assumes that he was entitled to be advised of his *Miranda* rights, but he does not argue that he was being interrogated.[12] Nor does he cite any authority in support of his argument. We are therefore unable to determine the specifics of Hunt's argument. If Hunt intended to make a claim regarding a *Doyle* violation,[13] he has failed to present a cogent argument or cite any authority in support of such a claim. And if Hunt intended to make a claim that the State improperly relied upon his post-arrest, pre-*Miranda* silence,[14] he has also failed to present a cogent argument or cite any authority in support of

---

[11] Hunt makes no argument that the admission of this evidence was fundamental error. *See Hollingsworth v. State*, 987 N.E.2d 1096, 1098–99 (Ind. Ct. App. 2013) (refusing to address whether claimed error was fundamental where defendant failed to provide any analysis of her claim of error within the context of the fundamental error rule), *trans. denied*.

[12] It does appear, however, that Hunt was in custody, as he was placed in handcuffs immediately after opening the door to the motel room.

[13] The use of a defendant's post-arrest, post-*Miranda* warning silence is strictly prohibited, whether it is used as substantive evidence or for impeachment purposes. *Willsey v. State*, 698 N.E.2d 784, 791 (Ind. 1998) (citing *Doyle v. Ohio*, 426 U.S. 610 (1976)); *Wainwright v. Greenfield*, 474 U.S. 284 (1986)).

[14] Indiana courts have held that post-arrest, pre-*Miranda* silence cannot be used as substantive evidence in the State's case-in-chief. *Peters v. State*, 959 N.E.2d 347, 353 (Ind. Ct. App. 2011) (citing *Akard v. State*, 924 N.E.2d 202, 209 (Ind. Ct. App. 2010), *trans. granted*, *summarily aff'd in relevant part*, 937 N.E.2d 811 (Ind. 2010)); *Rowe v. State*, 717 N.E.2d 1262, 1267 (Ind. Ct. App. 1999)). A defendant's post-arrest, pre-*Miranda* silence may, however, be used for impeachment purposes. *Peters*, 959 N.E.2d at 353 (citing *Fletcher v. Weir*, 455 U.S. 603, 607 (1982)).

such a claim. If we were to attempt to address Hunt's claims, we would need to develop his argument for him, which is not our role as an appellate court.

[29] Simply put, we are unable to address Hunt's argument as it is presented to us. Thus, not only did Hunt fail to preserve his claim of error on appeal, he has also waived any claim of error by failing to support it with a cogent argument and proper citation to authority. We therefore consider any argument on this issue waived.[15] *See* Ind. Appellate Rule 46(A)(8)(a); *Smith v. State*, 822 N.E.2d 193, 202–03 (Ind. Ct. App. 2005), *trans. denied*.

*C.  Testimony Regarding "Joint Possession" of the Items in the Motel Room*

[30] Hunt's last claim of evidentiary error is that trial court abused its discretion in admitting the following testimony from Officer Tarrh:

> Q.     Did you ever ask to have DNA done on, DNA testing or fingerprint testing done on any of the items [found in the motel room]?
>
> A.     No.
>
> Q.     And why not?
>
> A.     Well, looking at the way it all went down, he was hiding in the corner with the scales and the baggies,

---

[15] Even if Hunt had preserved any error with regard to Officer Tarrh's testimony, the use of a defendant's post-arrest silence is subject to harmless error analysis. *Sobolewski v. State*, 889 N.E.2d 849, 857 (Ind. Ct. App. 2008), *trans. denied* (citing *Chapman v. California*, 386 U.S. 18, 23 (1967); *Robinette v. State*, 741 N.E.2d 1162, 1164 (Ind. 2001)). Even error of a constitutional dimension may be harmless if it is clear beyond a reasonable doubt that the error did not contribute to the defendant's conviction. *Id*. (citing *Chapman*, 386 U.S. at 24; *Kubsch v. State*, 784 N.E.2d 905, 923 (Ind. 2003)). As explained *infra*, the evidence against Hunt was rather strong. We therefore conclude that admission of this one statement by Officer Tarrh, if erroneous, was harmless beyond a reasonable doubt.

> all the clothing was mixed together in one suitcase. His wallet and I.D. [were] in her purse. *It was obvious that they were both staying in the room and that they had joint possession of everything in the room.*

> [Defense]:  Objection, Your Honor. The answer calls for a legal conclusion.

> [Court]:  Overruled.

Tr. Vol. II, p. 144 (emphasis added).

[31]   On appeal, Hunt argues that Officer Tarrh testified to a legal conclusion. However, Hunt again fails to support his claim with any citation to authority or further legal analysis.[16] We therefore consider any argument on this issue waived. *See* App. R. 46(A)(8)(a); *Smith*, 822 N.E.2d at 202–03.

[32]   Even if we were to assume arguendo that Officer Tarrh's testimony was an improper legal conclusion, the admission of this testimony was harmless. Generally, errors in the admission of evidence are to be disregarded unless they affect the substantial rights of a party, and we will not reverse a defendant's conviction if the error was harmless. *Harrison v. State*, 32 N.E.3d 240, 254 (Ind. Ct. App. 2015), *trans. denied*. An error is harmless if substantial independent

---

[16] Hunt's argument on this issue is as follows:

> There is no need for a jury to decide about possession of a drug because the Trial Court's "Overruled" anchored the arresting officer's legal conclusion that "It was obvious . . . that they had joint possession of everything in the room." Jadie [sic] Spencer testified that the heroin found was hers, but the arresting officer was allowed to testify that "it was obvious . . . that they had joint possession." Allowing that question and answer really allows the jury no room to weigh the evidence. Usually police officers are not permitted to instructed [sic] jurors on the law.

Appellant's Br. at 15 (transcript citations omitted).

evidence of guilt satisfies us that no substantial likelihood exists that the challenged evidence contributed to the conviction. *Id*.

[33] Here, the evidence against Hunt was particularly strong. The only two people in the motel room were Hunt and Spencer. The police found scales and a substantial amount of heroin in a zippered bag on the table inside the room. Hunt's and Spencer's items were comingled. When the police arrived to serve the warrant for Spencer's arrest, Hunt opened the window in an attempt to flee, and then attempted to hide inside the room as the police looked in through the window. Hunt gave the police a false name. And from jail, Hunt wrote a letter to Spencer incriminating himself. We therefore conclude that Officer Tarrh's brief reference to "joint possession" was harmless.

### III. Constitutionality of False Informing Conviction

[34] Lastly, Hunt contends that his conviction for false informing cannot withstand constitutional scrutiny. Hunt's argument is hard to follow, but appears to be that identity is now subjective, not objective, and is therefore protected by the Fourth Amendment. He hypothesizes that a transgender person, such as Caitlyn Jenner, might be convicted of false informing if she identified herself as Caitlyn Jenner instead of her prior male identity, Bruce Jenner. This is, of course, beside the point in the present case.

[35] There is no indication that Hunt subjectively believed that he actually was Brooks Smith. Moreover, we do not think that one may "identify" as another person in order to avoid identifying oneself to the police. This is not the case

where Hunt identified himself as female and was subject to criminal liability therefore. He identified himself as another specific individual, in an obvious attempt to mislead the police. We discern no protectable Fourth Amendment interest in falsely claiming to be someone else.

# Conclusion

[36] The trial court did not err in denying Hunt's motion for discharge, as the trial court's continuances were based on court congestion. The trial court did not abuse its discretion in admitting testimony that Hunt gave a false name to the police, because basic identity questions are not protected by *Miranda*. Hunt's other claims of evidentiary error are waived and, waiver notwithstanding, harmless given the weight of the evidence against him. Lastly, Hunt has identified no protectable Fourth Amendment interest in his identifying himself to the police as another individual. For all of these reasons, we affirm the judgment of the trial court.

[37] Affirmed.

Vaidik, C.J., and Crone, J., concur.